IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH L. BOWMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 05-0274-WS-M |
| | ) |
| DONALD MORGAN, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter is before the Court on the parties' competing motions in limine. (Docs. 62-64). The parties have filed responses, (Docs. 66-69), and the motions are ripe for resolution. This order addresses certain of the matters raised in the motions, leaving others for resolution by subsequent order.

**I. Governing Substantive Law.**

The parties agree that Louisiana, as the situs of the accident and injury, provides the controlling substantive law under Alabama choice-of-law principles. (Doc. 62 at 2; Doc. 67 at 1). The plaintiff's motion to establish Louisiana substantive law as governing is thus **granted**.

**II. Medical Bills.**

The plaintiff asserts that he has incurred $67,030.52 in medical bills as a result of the accident, primarily in connection with a second total knee replacement, or "revision" of his pre-accident total knee replacement. (Doc. 62 at 3).[1] The defendant articulates three related challenges to these damages: (1) they are not causally related to the accident; (2) they were not necessarily incurred; and (3) they are not reasonable. (Doc. 63 at 4-6; Doc. 67 at 2-4).

"To recover past medical expenses, a plaintiff must show, through medical testimony, both the existence of the injury and a causal connection between the injuries and the incident or

---

[1] The defendant puts the figure at "over $68,000," (Doc. 67 at 2), but the discrepancy is not material for present purposes.

accident of which plaintiff complains." *Burrell v. Williams*, 2006 WL 1575991 at *3 (La. App. 2006). "To establish the causal connection between the injuries and the accident, the plaintiff must introduce competent evidence establishing that it is more probable than not that the injuries were caused by the trauma suffered in the accident." *Hall v. Folger Coffee Co.*, 857 So. 2d 1234, 1248 (La. App. 2003). It does not appear that the defendant challenges the plaintiff's ability to present a jury issue as to the existence of an injury caused by the accident, and the evidence suggests that any such challenge would be futile.[2]

"A plaintiff is required to establish both the causal connection between his injuries and the accident and the quantum of his damages." *Hall v. Folger Coffee*, 857 So. 2d at 1248. The "quantum of past medical expenses" is a "separate inquiry" from that of "medical causation." *Id*. at 1248-49. That is, as in Alabama and elsewhere, causation and damages under Louisiana law are two separate elements of a cause of action in tort. It is within the context of the element of damages that the defendant raises his challenges, including to causation.

The parties appear to agree that, to be recoverable under Louisiana law, medical expenses must be both necessary and reasonable. (Doc. 63 at 5; Doc. 66 at 4). With respect to the former, "the plaintiff must prove that, more probable than not, the medical treatment was necessitated by trauma suffered in the accident*.*" *Este' v. State Farm Insurance Co.*, 676 So. 2d 850, 857 (La. App. 1996). In some situations, a plaintiff may meet this burden without medical testimony. "When a plaintiff alleges that she has incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." *Id*.

Applying this principle, the defendant argues that the plaintiff has no medical testimony

---

[2]Dr. Finkel followed the plaintiff before the accident and performed a total knee replacement afterwards. Dr. Finkel testified that, in addition to the plaintiff's subjective complaints of increased left knee pain following the accident, he observed increased swelling and crepitus which he associated with the accident. (Finkel Deposition at 41). His notes and testimony reflect that the plaintiff's symptoms increased after the accident and continued to worsen thereafter. (*Id*. at 39-41, 43, 57-59, 61, 63). In surgery, Dr. Finkel observed the tibial component significantly compressed into the bone on the inner side of the knee, which he found to be consistent with both the accident and the plaintiff's increased swelling. (*Id*. at 64).

with which to establish that the medical treatment reflected in his bills was necessitated by the injury he received in the accident and that he cannot prove his case without such testimony because there is a reasonable suspicion that his treatment was unrelated to the accident.[3] It is in this sense that the defendant challenges causation.

>Dr. Finkel testified as follows:
>
>Q.  Would it be fair, Doctor, to say that the automobile accident contributed to this — to the need to have this revision surgery done on the left knee?
>...
>A.  Yes.  I think the knee was — Mr. Bowman was able to compensate and function in a limited manner, but afterwards, it seemed to be worse, and it just kept getting worse.
>Q.  And it got to the point where his pain was such that he finally elected to have the procedure done to cure the pain?
>A.  That's correct.

(Finkel Deposition at 63-64).  The plaintiff asserts that Dr. Finkel's testimony provides any needed medical testimony, obviating consideration of whether he can prove his case under the *Este'* exception.  (Doc. 62 at 4-6; Doc. 66 at 4).[4]

The defendant identifies three deficiencies in Dr. Finkel's testimony:  (1) he elsewhere testified that the surgery was required because the pre-accident total knee replacement failed; (2) he testified the plaintiff's symptoms were the same after the accident as before, only increased; and (3) he testified that the plaintiff continued to experience the same sorts of symptoms after the post-accident surgery.  (Doc. 67 at 4).  The short answer is that these are challenges to the credibility of Dr. Finkel's conclusion that the accident contributed to the need for surgery and thus are for the jury and not the Court.[5]

---

[3]The defendant initially challenged the bills as unauthenticated, (Doc. 67 at 2-3), but he has since withdrawn the argument.  (Doc. 69).

[4]The plaintiff has advised that Dr. Finkel cannot testify at trial because of health problems and that his deposition will be presented in lieu of live testimony.  The plaintiff has identified no additional medical witness, other than for purposes of authentication.  (Doc. 60 at 11-13).  Thus, because the scope of the plaintiff's medical testimony is already known, it is not premature to consider the defendant's challenge to the medical bills.

[5]It is worth noting, however, that the deposition excerpts to which the defendant has cited do not appear to attribute the post-accident surgery to the pre-accident total knee replacement.

The defendant next suggests that Dr. Finkel's testimony is inadequate because it addresses the causal relation between the accident and the post-accident surgery but not between the accident and the medical bills associated with that surgery. (Doc. 67 at 3-4). The defendant cites no precedent for this unlikely proposition, and his own authority suggests that Louisiana would reject such hair-splitting.[6] More to the point, and as noted above, what the plaintiff must prove is that "the medical *treatment* [not the bill from the treatment] was necessitated by trauma suffered in the accident." *Este' v. State Farm Insurance*, 676 So. 2d at 857 (emphasis added).[7]

Based on the argument, authority and evidence presented, the Court must conclude that Dr. Finkel's deposition testimony constitutes medical evidence that the plaintiff's surgery was necessitated by the injury he experienced in the accident, which testimony a jury would be entitled, though not required, to accept.[8]

Although unaddressed by the defendant, the Court notes that the plaintiff's medical bills include, in addition to those of Dr. Finkel, those of the hospital in which the surgery was performed, the anesthesiology service, and two doctors whom the plaintiff asserts provided post-surgical medicine and rehabilitation services in the first nine days after surgery. (Doc. 62 at 3;

---

While Dr. Finkel described the first replacement as "failed," he also stated that the accident made the situation worse, and other testimony reflects that Dr. Finkel presented a second total knee replacement only as an "option" before the accident but as a "recommendation" afterwards. (Finkel Deposition at 26, 44, 57, 61). The defendant's statement that Dr. Finkel recommended total knee replacement a few weeks before the accident, (Doc. 67 at 3), is unsupported by any deposition excerpt and is contradicted by the defendant in his earlier brief. (Doc. 63 at 4).

[6]*See Hall v. Folger Coffee*, 857 So. 2d at 1248-49 (because "it is not necessary for the plaintiff's medical witness to recite the proper legal jargon verbatim before the trial court can properly rely on his testimony" concerning medical causation, and because "courts should look to the *substance* of a witness's testimony," the witness's "failure to recite that it is more probable than not that [the plaintiff's] injuries were consistent with the reported accident's mechanism of injury" was not fatal to the plaintiff's case)(internal quotes omitted)(emphasis in original).

[7]*Accord Hall v. Folger Coffee*, 857 So. 2d at 1249 (exploring whether "the medical services [not the bills] were necessary").

[8]The defendant does not address the meaning of "necessitated," leaving the Court to conclude that it encompasses "but for" causation of the sort described by Dr. Finkel.

*id*., Exhibit 9).⁹  Because knee replacement surgery is ordinarily if not exclusively performed in hospitals under anesthetic, Dr. Finkel's testimony that the surgery was necessitated by the accident is effectively medical evidence that the hospital stay and anesthesiology services were likewise necessitated by the accident.  Because it is at least plausible that total knee replacement requires post-surgical medicine and rehabilitation services, his testimony would appear similarly to constitute medical evidence that these expenses were also necessitated by the accident.  Absent authority or persuasive argument from the defendant, the Court is unprepared to rule otherwise.¹⁰

Because there is medical testimony that the plaintiff's medical treatment was necessitated by injuries suffered in the accident, it is unnecessary to consider whether the bills themselves are sufficient to meet the plaintiff's burden.  In particular, the medical testimony renders irrelevant for present purposes the defendant's argument that the plaintiff's age, medical history and fall in Las Vegas raise a reasonable suspicion that his medical bills are unrelated to the accident.¹¹

With respect to reasonableness, the defendant again argues that medical testimony is required unless there is no reasonable suspicion that the charges are unrelated to the accident.  Because Dr. Finkel did not testify as to the reasonableness of the bills, the defendant concludes that the Court must address his "reasonable suspicion" argument.  (Doc. 63 at 5-6; Doc. 67 at 2-3).

---

⁹According to the plaintiff's proffered summary of charges, the distribution of expenses is approximately as follows: Dr. Finkel (pre-op), $1,180; Dr. Finkel (surgery), $6,200; Greater Houston Anesthesiology, $3,705; St. Luke's Hospital, $54,359.98; Dr. Finkel (post-op), $796.50; other post-op providers, $979.  (Doc. 62, Exhibit 3).

¹⁰The plaintiff notes that "[i]t is well settled that a tortfeasor is liable for unnecessary treatment or over treatment unless the tortfeasor can show that the plaintiff underwent the treatment in bad faith." *Spangler v. Wal-Mart Stores, Inc*., 673 So. 2d 676, 679 (La. App. 1996).  The defendant has not challenged particular charges as unnecessary.  To the extent he may attempt to do so at trial, he will have to show the plaintiff's bad faith or explain why this rule does not apply to him.

¹¹It is worth noting, however, that the term "unrelated" ordinarily suggests "lacking any connection."  While the defendant's arguments may raise a reasonable suspicion that the plaintiff's surgery was not caused exclusively by the accident, it is more difficult to identify a reasonable suspicion that the surgery lacked any connection to the accident.

Assuming without deciding that the defendant has correctly stated Louisiana law, his only argument as to reasonableness is that he "questions whether $68,000 in medical expense are [sic] reasonable to treat a contusion resulting from a bump on the knee in a motor vehicle accident." (Doc. 67 at 3). On its face, this is not an attack on the reasonableness of the charges for a total knee replacement and associated hospital stay, anesthesiology and post-op care but on the necessity of surgery to begin with. It is, in short, only a recycled challenge to the necessity of the treatment generating the charges, and that challenge has been rejected above.

The defendant's only other reference to reasonableness is to assert that "at the very least some of the costs are attributable to the plaintiff's war wounds or his fall at the hotel, or to simple aging," and he complains that it is "simply unfair" to tag him with responsibility for the whole cost "when no medical professional has testified one way or the other about the apportionment of these costs and expenses." (Doc. 67 at 3 n.1). This too is not truly an attack on the cost of the care received but on whether the accident (as opposed to, or in addition to, some other factor) necessitated the care. As discussed above, the plaintiff has medical testimony that, but for the accident, he would not have required a second total knee replacement. Absent authority (which the defendant does not provide) for the proposition that such a plaintiff must also either show that no other cause contributed to the need for surgery or provide medical testimony as to how much of the treatment is attributable to other causes, the argument must be rejected.

For the reasons set forth above, the defendant's motion in limine to exclude evidence of the plaintiff's medical bills is **denied**. Because this order does not definitively resolve the admissibility of the medical bills, the plaintiff's motion in limine to ensure the admissibility of the bills is also **denied**. For the same reason, the plaintiff's motion in limine to ensure the admissibility of an itemized list of medical bills is likewise **denied**.

### III. Motion for a Continuance.

The plaintiff moves for a continuance in the event the Court rules his medical bills inadmissible, in order to allow him time to obtain additional evidence with which to render them admissible. (Doc. 62 at 11). The motion is premature, since the Court has made no such ruling.

Nor could the plaintiff obtain a continuance to conduct additional discovery even if the Court in the future excludes the medical bills. In accordance with the plaintiff's request, (Doc. 47), the discovery deadline established under Rule 16(b) was April 7, 2006. (Doc. 49). Modification of that deadline requires a showing of "good cause," Fed. R. Civ. P. 16(b), which standard "precludes modification unless the schedule could not be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)(internal quotes omitted). Any failure of the plaintiff to obtain the necessary evidence before the discovery period lapsed reflects a lack of diligence in doing so.[12]

Moreover, at the pretrial conference the parties confirmed that all discovery had been accomplished, and the pretrial order accordingly announces that "[a]ll discovery was completed before the date of the pretrial conference." (Doc. 61 at 2). The pretrial order also established the date for jury selection as August 1, 2006 and the date for trial as August 15, 2006. (*Id*. at 1). The order following a final pretrial conference "shall be modified only to prevent manifest injustice." Fed. R. Civ. P. 16(e). While the pure "manifest injustice" standard obtains only when granting the amendment would result in "substantial injury or prejudice to the opposing party or inconvenience to the court," with the standard otherwise being that "[t]here is a presumption that a pretrial order will be amended in the interest of justice and sound judicial administration,"[13] the plaintiff can satisfy neither test. It can hardly advance the cause of sound judicial administration to continue a case after jury selection because a party has suddenly realized his failure to properly prepare for trial, and there is certainly no manifest injustice in holding a party to the consequences of such a failure.

---

[12]The plaintiff suggests that he had intended to take the trial deposition of Dr. Finkel but learned this spring that he had become seriously ill, closed his practice, and apparently become unavailable for such a deposition. (Doc. 62 at 11). Dr. Finkel's deposition, however, was taken on March 6, 2006, and all evidence necessary to obtain the admission of the medical bills could, in the exercise of diligence, have been obtained at that time. This is especially true given that the defendant treated the deposition as a trial deposition. (Finkel Deposition at 12-13; Doc. 67, Exhibit 11). Notably, at no time after learning of Dr. Finkel's condition did the plaintiff seek to extend the discovery deadline, an omission that does not reflect the exercise of diligence.

[13]*United States v. Varner*, 13 F.3d 1503, 1507-08 (11th Cir. 1994); *accord Jacobs v. Agency Rent-A-Car, Inc.*, 145 F.3d 1430, 1432 (11th Cir. 1998).

For the reasons set forth above, the plaintiff's motion for a continuance is **denied**.

DONE and ORDERED this 11th day of August, 2006.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE